UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

EVANGELINA L. RICHARDS,

                Plaintiff,

-vs-
                                          Case No. 5:05-cv-302-Oc-10GRJ

PUBLIX SUPERMARKET, INC.,

                Defendant.
_____

## **O R D E R**

This Americans with Disabilities Act ("ADA") and Florida Civil Rights Act ("FCRA") case is before the Court for consideration of the Defendant's Motion for Summary Judgment (Doc. 18), to which the Plaintiff did not respond.  Upon review of the case file and all relevant papers, and for the reasons that follow, the Defendant's motion is due to be granted.

### **Background and Facts**

The pertinent facts in this case, viewed in the light most favorable to the Plaintiff, are as follows.  In 2001, Publix hired the Plaintiff as a front service clerk.  At some later time, the Plaintiff worked as a "demonstrator" in the Publix produce department.  However, Publix management transferred the Plaintiff back to the role of front service clerk due to

customer complaints and management's decision that the Plaintiff was not working effectively as a demonstrator.[1]

In 2003, following her transfer back to the role of front service clerk, the Plaintiff provided Publix management with a note from her chiropractor, in which he prohibited her from "pulling or lifting" more than 15 pounds. The note stated that the Plaintiff was examined and treated for "neck pain and lower back pain."[2] At that time, the Plaintiff also informed Publix management that she could not push more than 15 pounds, and that she was having trouble performing her front service clerk duties, which included bagging groceries, assisting customers to their vehicles, and retrieving shopping carts from the parking lot. Publix management instructed the Plaintiff not to lift outside her restrictions and not to collect shopping carts. The Plaintiff was given light cleaning duties, such as leveling, spot mopping, and spot sweeping. The Plaintiff was also instructed not to push customers' shopping carts if the cart was too heavy or contained items outside her lifting restrictions; the Plaintiff was to ask another employee who was bagging groceries to assist her customer, and take over bagging groceries for that employee.

---

[1] Publix Store Manager Lori Corbin stated in her declaration that: "I had received complaints from customers that Ms. Richards made them feel uncomfortable discussing her personal life, she did not promote sales, and she did not keep her work station up to Publix' sanitary standards."

[2] In a January 28, 2004 memorandum, the Plaintiff's medical doctor concluded that: "The MRI of the lumbar spine was normal. The patient is able to do full activity. . . . Pain is likely related to the patient's fibromyalgia."

Despite these directions, the Plaintiff asserts that Publix employees, including certain managers, directed her to collect shopping carts[3] and treated with indifference her permission to perform lighter work.  The Plaintiff requested on several occasions that she be transferred to the position of demonstrator, cashier, or pharmacy technician as an accommodation for her disability.  Publix denied each of these requests.  As to the cashier position, Publix management determined that due to her lifting restriction the Plaintiff would not be able to perform the essential duties of that job, which included pushing and pulling items that may weigh in excess of 15 pounds as well as periods of prolonged standing.  As to the pharmacy technician position, Publix management determined the Plaintiff would not be able to perform the essential duties of that job, which included prolonged standing and reaching items on high and low shelves.  Further, both the position of cashier and pharmacy technician were considered promotions from the front service clerk position and included higher pay.  In addition, the demonstrator position had been phased out by Publix.  Management did not allow the Plaintiff to work as a "meals clerk" - a similar position to demonstrator - because Publix did not have the need for an additional meals clerk at that time and, in any case, management believed that due to the Plaintiff's difficulties as a demonstrator she would not be successful as a meals clerk.

In August 2004, the Plaintiff brought Publix management another note from her chiropractor, in which he stated that the Plaintiff "should be excused from work until

---

[3] The Plaintiff admitted that she was able to push at least one shopping cart at a time.

September 10, 2004." In response to the note, Publix manager Lori Corbin explained to the Plaintiff that she may be able to qualify for leave under the Family Medical Leave Act ("FMLA") and provided the Plaintiff with a FMLA medical certification form. On August 11, 2004, the Plaintiff's doctor stated on the medical certification form that the Plaintiff "was able to perform work of any kind." Publix management also ascertained that the Plaintiff was not qualified to receive FMLA leave because she had not worked 1250 hours in the past calendar year. However, the Plaintiff was eligible under Publix' employment policy for a Disability Leave of Absence of 90 days. The Plaintiff requested and was granted that leave. While on leave, the Plaintiff brought a letter of resignation to Publix management. The Plaintiff stated that she resigned because she "couldn't do the work anymore."

On June 29, 2005, the Plaintiff filed her Complaint, in which she alleged that Publix violated the ADA by forcing her to work in a job in which she was unable to perform due to a disability and by refusing to provide a reasonable accommodation. The Plaintiff exhausted her administrative remedies and the EEOC provided her with a right to sue letter on March 31, 2005. At the time she filed her Complaint, the Plaintiff was represented by counsel. However, on April 28, 2006, the Plaintiff's counsel was permitted to withdraw, and the Plaintiff now proceeds pro se. On June 20, 2006, Publix filed the motion for summary judgment that is now before the Court.

**Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held in Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. Moreover, conclusory allegations and unwarranted deductions of fact are not accepted as true in the pleadings of a pro se - or any - litigant. See Eidson v. Arenas, 837 F. Supp. 1158 (M.D. Fla. 1993).

**Discussion**

Both the ADA and FCRA prohibit employers from discriminating in employment against otherwise qualified individuals with a disability.[4]  To resolve a claim of disability discrimination, both statutes apply the burden-shifting analysis set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973); see Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000).  Using this burden-shifting approach, the Plaintiff must first establish a prima facie case of discrimination by showing that: (1) she has a disability; (2) she is a "qualified individual with a disability;" and (3) Publix unlawfully discriminated against her because of her disability.  Hilburn v. Muarata Electronics N.A., Inc., 181 F.3d 1220, 1226 (11th Cir. 1999); LaChance v. Duffy's Drafthouse, Inc., 146 F.3d 832, 835 (11th Cir. 1998).  If the Plaintiff is able to establish her prima facie case, the burden then shifts to Publix to come forward with a legitimate, nondiscriminatory reason for failing to provide the requested accommodations.

Publix seeks summary judgment by arguing that the Plaintiff cannot establish the elements of her prima facie case.  The Court agrees.

Publix first argues that the Plaintiff cannot establish a claim under the ADA because she does not suffer from a disability.  In order to satisfy this portion of her prima facie case, the Plaintiff must satisfy the definition of "disability" set forth under the ADA:  (1) a physical

---

[4]See 42 U.S.C. § 12101; Fla. Stat. § 760.11.  The FCRA follows the same standards and applies the same law as the ADA.  See Chanda v. Engelhard/ICC, 234 F.3d 1219, 1221 (11th Cir. 2000); Downing v. United Parcel Service, Inc., 215 F. Supp.2d 1303, 1308-09 (M.D. Fla. 2002); see also Smith v. Avatar Properties, Inc., 714 So.2d 1103, 1106-07 (Fla. 4th DCA 1998).

or mental impairment that substantially limits one or more major life activities; (2) a record of such impairment; or (3) being regarded as having such impairment. 42 U.S.C. § 12101(2). An individual is deemed to be "disabled" for purposes of the ADA if she satisfies any one of these three enumerated definitions. See 29 C.F.R. § 1630.2(g).

Neither party focuses on the "record of" or "regarded as" definitions of disability. Rather, the focus at this stage is on the first definition of disability, *i.e.*, actual disability. This definition contains three elements, all of which the Plaintiff must prove. Bragdon v. Abbott, 524 U.S. 624, 631 (1998). First, she must have a recognized physical or mental impairment; second, she must identify one or more "major life activities" affected by the impairment; and third, she must show that the impairment "substantially limits" one or more of these activities. Rossbach v. City of Miami, 371 F.3d 1354, 1357 (11th Cir. 2004). The first two elements are to be determined by the Court as a matter of law. See Doebele v. Sprint/United Mgmt. Co., 342 F.3d 1117, 1129 (10th Cir. 2003). Determining whether the impairment substantially limits a major life activity is ordinarily a question of fact for the jury; however, summary judgment is appropriate if the Plaintiff fails to create a genuine issue of fact in this regard.

The first element of actual disability - that the Plaintiff suffers from a recognized impairment - is met in this case. Publix does not dispute that the Plaintiff suffers from fibromyalgia and sciatica and that this condition qualifies as a physical impairment for purposes of the ADA and FCRA. However, a physical impairment, standing alone, does not necessarily make one actually disabled. Hilburn, 181 F.3d at 1226; Pritchard v.

Southern Company Services, 92 F.3d 1130, 1132 (11th Cir. 1996). Rather, the impairment must substantially limit one or more of the individual's major life activities. Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 725-26 (5th Cir. 1995). See also Swain v. Hillsborough County School Bd., 146 F.3d 855, 858 (11th Cir. 1998) (a plaintiff "must provide some evidence beyond the mere existence and impact of a physical impairment to survive summary judgment").

To establish the second element of the definition of actual disability, the Plaintiff must identify the major life activities affected by her impairment. As the Supreme Court explained, "'[m]ajor' in the phrase 'major life activities' means important. 'Major life activities' thus refers to those activities that are of central importance to daily life." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195 (2002). Major life activities are enumerated under the ADA as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). If not contained within these exemplars, the activity must be of "central importance" or "significant" to daily life. Toyota Motor Manuf., 534 U.S. at 197; Bragdon, 524 U.S. at 638; Rossbach, 371 F.3d at 1357.

In the case at bar, the Plaintiff maintains that her fibromyalgia and sciatica affect her ability to push, pull or lift more than fifteen pounds. The Eleventh Circuit "has never decided the question of whether a lifting restriction fails as a matter of law to establish a disability within the meaning of the ADA, [although] a number of other circuits have determined that it does." Kay v. Lester Coggins Trucking, Inc., 141 Fed. Appx. 824, 827

n.4 (11th Cir. 2005) (citing Reed v. Heil Co., 206 F.3d 1055, 1061 (11th Cir. 2000)). In Kay, the Eleventh Circuit noted that a district court in Georgia had chosen not to follow the other circuits. Kay, 141 Fed. Appx. at 827 n.4 (citing Frix v. Florida Tile Indus., Inc., 970 F. Supp. 1027, 1034 (N.D. Ga. 1997) (holding that a serious and permanent lifting restriction could be considered a disability under the ADA)). Kay involved the question of whether an employee who was perceived to be temporarily unable to lift more than thirty pounds was disabled under the ADA. Kay, 141 Fed. Appx. at 826-27. The Eleventh Circuit distinguished the district court case - Frix - on its facts, because that case involved a permanent lifting restriction, and Kay involved a temporary restriction. The court reasoned that the inability "to lift more than thirty pounds can be considered an impairment, yet not a disability for purposes of proving a prima facie case under the ADA." Id. at 826 (emphasis in original).

Here, there is no evidence that the Plaintiff's inability to push, pull or lift more than 15 pounds is a permanent disability. Indeed the Plaintiff's doctor stated that the MRI of her lumbar spine was normal and that the Plaintiff was "able to do full activity." Moreover, the Plaintiff's chiropractor excused her from work for less than two months. Thus, the Court distinguishes Frix on its facts, and finds that, as in Kay, the Plaintiff's "only impairment, real or imagined, was neither severe, permanent nor long-term for purposes of the ADA." Kay, 141 Fed. Appx. at 827. In addition, the Court notes that the Plaintiff admits that she is able to able to care for herself; she can brush her teeth, wash her face, bathe herself, fix herself breakfast, and do laundry. Moreover, since leaving Publix she has obtained other

9

satisfactory employment.  While the Plaintiff may have an impairment, she is not disabled under the ADA.

Finally, even if the Plaintiff had established that she suffers from a disability as defined under the ADA, (or created a material issue of fact in this regard), and had established that she is a qualified individual with a disability, the Plaintiff has failed to establish the third prong of her prima facie case: that she was subject to unlawful discrimination on the basis of her disability.  Indeed, her claim still fails because Publix provided her with reasonable accommodations and, in contrast, the accommodations she requested were not reasonable.  It is undisputed that Publix attempted to accommodate the Plaintiff by placing her on light cleaning duties and providing her with permission to work within her lifting restrictions.  Moreover, the Plaintiff was provided a leave of absence even though she did not qualify for FMLA leave.  On the other hand, the Plaintiff requested transfer to positions that involved a promotion, exceeded her lifting restrictions, required her to reach low and high shelves, or were occupied.  See Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1256 (11th Cir. 2001) ("[T]he ADA may require the employer to 'reassign,' i.e., transfer, the disabled employee to a vacant position as a reasonable accommodation.  The reassignment duty, however, does not require the employer to bump another employee from a position in order to accommodate a disabled employee.  Nor does it require the employer to promote a disabled employee.") (citations omitted).  In addition, the Court notes that the Plaintiff resigned while on a leave of absence and the timing of her

departure weakens any argument that Publix did not accommodate the Plaintiff or that the Plaintiff's resignation was prompted by an atmosphere that compelled her to quit.

## Conclusion

Accordingly, upon due consideration, it is ordered that:

(1) Defendant Publix Supermarket, Inc.'s Motion for Summary Judgment (Doc. 18) is GRANTED;

(2) the Clerk is directed to enter judgment in favor of Defendant Publix Supermarket, Inc. and against the Plaintiff with costs to be assessed according to law; and

(3) the Clerk is directed to terminate any pending motions and close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 16th day of February, 2007.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record